SPECT IMAGING, INC v ALLSTATE INSURANCE COMPANY
SPECT IMAGING, INC v AUTO CLUB INSURANCE ASSOCIATION

Docket Nos. 219347, 219397, 219401, 219405. Submitted April 12, 2001, at
    Detroit. Decided June 29, 2001, at 9:10 A.M.

    SPECT Imaging, Inc., brought actions in the Wayne Circuit Court
against no-fault insurers Allstate Insurance Company and Auto
Club Insurance Association, alleging in part that the defendants
violated the no-fault act, MCL 500.3101 *et seq.*, by failing to pay for
single photon emission computed tomography (SPECT) scans per-
formed by the plaintiff on the brains of the defendants' insureds for
diagnosis of mild traumatic brain injury. The court, John A. Mur-
phy, J., on cross-motions for summary disposition, granted sum-
mary disposition for the plaintiff, ruling that there existed no genu-
ine issues of material fact and the plaintiff was entitled to judgment
as a matter of law. All parties appealed, and their appeals were
consolidated.

    The Court of Appeals *held*:

    1. Subsection 3107(1)(a) of the no-fault act, MCL 500.3107(1)(a),
provides that personal protection insurance benefits are payable
for allowable expenses consisting of all reasonable charges
incurred for reasonably necessary products, services, and accom-
modations for an injured person's care, recovery, or rehabilitation.
An insurer is not liable for any medical expense to the extent that
it is not a reasonable charge for a particular product or service, or
if the product or service itself is not reasonably necessary. Reason-
ableness and necessity are necessary elements of a claimant's
recovery, and their absence is a defense to the insurer's liability.
The question whether an expense is reasonable and reasonably
necessary is generally one of fact for the jury. In this case, where
the defendants contested the reasonableness and necessity of the
plaintiff's services with respect to their insureds, and the plaintiff
did not prove that each expense was reasonably necessary for each
insured, the trial court erred in determining as a matter of law that
the brain SPECT scans constituted reasonably necessary services
under subsection 3107(1)(a).

    2. On remand, the trial court must conduct an evidentiary hear-
ing to determine whether expert testimony and evidence relating to

spect imaging are admissible under MRE 702 and *Davis-Frye* (*People v Davis*, 343 Mich 348 [1955], and *Frye v United States*, 54 US App DC 46; 293 F 1013 [1923]). If the trial court determines that such expert testimony and evidence satisfy the standards of MRE 702 and *Davis-Frye*, and are therefore admissible at trial, the determination whether brain spect imaging was a reasonably necessary expense in the treatment of the defendants' insureds pursuant to subsection 3107(1)(a) is to be reserved for the trier of fact.

3. The trial court erred in concluding that the doctrine of primary jurisdiction precluded it from considering defendant Auto Club's allegations that the proprietor of the plaintiff engaged in misconduct in violation of the Public Health Code, MCL 333.1101 *et seq.*, by referring patients to a facility in which he had an interest and by employing an individual who was not licensed to perform spect scans. The trial court has original subject-matter jurisdiction of the plaintiff's direct provider no-fault claim, and this case is not one where the doctrine of primary jurisdiction requires the trial court to defer to the relevant licensing authority. Furthermore, the nature of the factual and legal questions presented are not of a type to require agency expertise to evaluate, defendant Auto Club's allegations present basic issues of fact and law that the courts address on a regular basis, and requiring the trial court to decide whether there are violations of the Public Health Code will not result in the regulatory scheme being thrown out of balance.

Reversed and remanded.

1. Insurance — No-Fault — Personal Protection Insurance — Medical Expenses.

A no-fault insurer is liable to pay personal protection insurance benefits for reasonable charges incurred for reasonably necessary products, services, and accommodations for an injured person's care, recovery, or rehabilitation; reasonableness and necessity are necessary elements of a claimant's recovery, and their absence is a defense to the insurer's liability (MCL 500.3107[1][a]).

2. Evidence — Expert Testimony — Recognized Scientific Knowledge.

MRE 702 requires a trial court to determine the evidentiary reliability or trustworthiness of the facts and data underlying an expert's testimony before that testimony may be admitted; the court must determine whether the proposed testimony is derived from recognized scientific knowledge to determine whether the requisite standard of reliability has been met; to be derived from recognized scientific knowledge, the proposed testimony must contain inferences or assertions, the source of which rests in an application of scientific methods; the inferences and assertions must be supported by

appropriate objective and independent validation based on what is known, but the subject of scientific testimony need not be known to a certainty; expert testimony is admissible no matter how novel where the basic method and principles employed by the expert to reach a conclusion are sound and create a trustworthy foundation for the conclusion reached.

3. EVIDENCE — NOVEL SCIENTIFIC EVIDENCE.

The party proferring novel scientific evidence bears the burden of demonstrating that the evidence has gained general acceptance in the scientific community.

4. COURTS — JURISDICTION — ADMINISTRATIVE AGENCIES — PRIMARY JURISDICTION.

No fixed formula exists for determining whether the doctrine of primary jurisdiction applies; each case must be decided on its own facts; when determining whether the doctrine applies in a given case, a court should consider to what extent the agency's specialized expertise makes it a preferable forum for resolving the issue, the need for uniformity and consistency in resolution of the issue, and whether judicial resolution of the issue will have an adverse effect on the agency's performance of its regulatory responsibilities.

*Danielle P. McCluskey* and *Sheila R. Thorp*, for SPECT Imaging, Inc.

*Garan, Lucow, Miller & Seward, P.C.* (by *David M. Shafer* and *David J. Lankford*), for Allstate Insurance Company.

*Lanctot, McCutcheon, Schoolmaster, Taylor & Hom* (by *David R. Tuffley*) (*Gross, Nemeth & Silverman, P.L.C.* by *Mary T. Nemeth*, Of Counsel), for the Auto Club Insurance Association.

Before: O'CONNELL, P.J., and FITZGERALD and WILDER, JJ.

O'CONNELL, P.J. In these cases consolidated on appeal, defendants Allstate Insurance Company (Docket No. 219347) and Auto Club Insurance Associ-

ation (ACIA) (Docket No. 219401) appeal as of right from judgments in favor of plaintiff SPECT Imaging, Inc. In Docket Nos. 219397 and 219405, plaintiff also appeals as of right from the same judgments. We reverse and remand in all cases.

Plaintiff is a business providing single photon emission computed tomography (SPECT) brain imaging services to the general public. SPECT imaging is a process in which a flow-tracer or receptor-binding substance is injected intravenously into an individual. This flow-tracer accumulates in a certain part of the brain according to the distribution of nutrients in the brain. By the use of a gamma camera, a three-dimensional image of the brain is obtained and transmitted onto a computer screen.

Plaintiff initiated the present actions against defendants in 1996 and 1997, alleging as relevant to this appeal that defendants failed to pay for brain SPECT scans performed on a number of defendants' insureds and that such failure to pay is a violation of the no-fault act, MCL 500.3101 *et seq.* In the complaints, plaintiff did not refer specifically to the individuals allegedly insured by defendants. Rather, the identities of these individuals, whether they were injured in motor vehicle accidents, and the extent of their alleged injuries is information that is unclear from the record.

During discovery, defendants moved for an evidentiary hearing, seeking to determine whether evidence of SPECT imaging, which defendants claimed was a "novel scientific procedure" was admissible pursuant to MRE 702 and MCL 600.2955. For reasons unclear from the record, the trial court declined to hold an

evidentiary hearing, instead ordering the parties to bring cross-motions for summary disposition.

Pursuant to the trial court's order, plaintiff moved for summary disposition under MCR 2.116(C)(10), arguing that factual disputes did not exist with regard to whether plaintiff's charges for SPECT imaging were allowable expenses under the no-fault act. In response, defendants argued that plaintiff failed to set forth evidence to support its assertion that SPECT imaging was necessary for each of defendants' insureds. Defendants also contended that genuine issues of material fact existed with regard to whether SPECT imaging was an established, reliable medical procedure to the extent that it was a "reasonably necessary" expense under MCL 500.3107(1)(a). In support of their respective motions, the parties presented the trial court with the deposition testimony of numerous experts as well as extensive medical literature discussing the merits and disadvantages of using SPECT scan imaging to diagnose mild traumatic brain injury.

After a hearing on the parties' motions, the trial court issued a seventeen-page written opinion granting plaintiff's motion for summary disposition and denying defendants'. The trial court reviewed § 3107 of the no-fault act, observing that "implicitly [§ 3107] would seem to require a showing that any medical technology used for any medical expense incurred is at least somewhat reliable." It appears from a review of the trial court's ruling that the trial court favored an approach grounded in public policy. Moreover, the trial court appeared reluctant to render a decision that would inhibit physicians in their use of new,

novel technology to treat patients. A review of the trial court's comments are of guidance:

> Given the limited number of tools in his armamentarium, the practitioner could conclude that the SPECT scan is a useful enough instrument for brain injury cases. The practitioner must be forward-looking enough to the point of anticipating new technology and how it may help his patients. We note that aside from their cost, no downside to using such scans has been shown; in particular, there is no evidence that SPECT scans harm patients. We find it extremely difficult to conclude that the SPECT scans do not represent "reasonably necessary" expenses. Diagnosing head injuries is not easy; medical science does not yet have sufficient tools of sufficient power to pinpoint each and every injury. Indeed the instant dispute proves this: the reason doctors and other medical personnel have resorted to the sometimes exotic technology of imaging is because it is so hard to assess brain activity and provide meaningful measurements of it. . . . In sum, given the imperfect state of the field, it does not strike us as unreasonable for a doctor to use even imperfect tools like SPECT scans.

On appeal in Docket Nos. 219347 and 219401, defendants challenge the trial court's grant of summary disposition under MCR 2.116(C)(10) in favor of plaintiff. We review de novo a trial court's grant of summary disposition. *Asset Acceptance Corp v Robinson*, 244 Mich App 728, 730; 625 NW2d 804 (2001). A motion brought under MCR 2.116(C)(10) tests whether there is factual support for a claim. *Burden v Elias Bros Big Boy Restaurants*, 240 Mich App 723, 725-726; 613 NW2d 378 (2000).

> In evaluating a motion for summary disposition brought under [MCR 2.116(C)(10)], a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion. Where the proffered evidence fails to

establish a genuine issue of any material fact, the moving party is entitled to judgment as a matter of law. [*Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999) (citations omitted).]

The crux of defendants' argument on appeal is that the trial court erred in determining as a matter of law that brain SPECT scans constitute "reasonably necessary" expenses under the no-fault act where factual disputes existed with regard to whether the scans were reasonable and necessary in relation to defendants' insureds. We agree.

These appeals implicate § 3107 of our no-fault act. MCL 500.3107(1)(a) provides in relevant part:

[P]ersonal protection insurance benefits are payable for the following:

Allowable expenses consisting of all reasonable charges incurred for *reasonably necessary* products, services and accommodations for an injured person's care, recovery, or rehabilitation. [Emphasis supplied.]

To be reimbursed for an "allowable expense" under MCL 500.3107(1)(a), a plaintiff bears the burden of proving that (1) the charge for the service was reasonable, (2) the expense was reasonably necessary, and (3) the expense was incurred. *Shanafelt v Allstate Ins Co*, 217 Mich App 625, 637; 552 NW2d 671 (1996); *Owens v Auto Club Ins Ass'n*, 444 Mich 314, 323-324; 506 NW2d 850 (1993); *Davis v Citizens Ins Co of America*, 195 Mich App 323, 326-327; 489 NW2d 214 (1993).

At issue is whether the brain SPECT scans performed by plaintiff on defendants' insureds were reasonably necessary expenses to the extent that defendants are liable for reimbursing plaintiff. In *Nasser v Auto Club*

*Ins Ass'n*, 435 Mich 33, 52, n 7; 457 NW2d 637 (1990), our Supreme Court observed that § 3107 is a provision of liability.

> [A]n insurer is not *liable* for any medical expense to the extent that it is not a reasonable charge for a particular product or service, or if the product or service itself is not reasonably necessary. The plain and unambiguous language of § 3107 makes both reasonableness and necessity explicit and necessary elements of a claimant's recovery, and thus renders their absence a defense to the insurer's liability. [*Nasser, supra* at 49 (emphasis in original).]

As the *Nasser* Court recognized, "the question whether expenses are reasonable and reasonably necessary is generally one of fact for the jury." *Id.* at 55 (citations omitted); see also *Hofmann v Auto Club Ins Ass'n*, 211 Mich App 55, 94; 535 NW2d 529 (1995). In the instant case, plaintiff argues that the trial court properly determined that brain SPECT scans are a reasonably necessary expense as a matter of law. Plaintiff correctly recognizes that in some instances, the trial court may properly determine the issue as a matter of law, if it can be " 'said with certainty' that an expense was both reasonable and necessary." *Nasser, supra* at 55 (internal quotations and citations omitted).

In the lower court, defendants vehemently argued that brain SPECT scans were not reasonably necessary services in the treatment of defendants' insureds. In spite of defendants' strong objections, the trial court decided as a matter of law that brain SPECT imaging was a reasonable and necessary expense and was therefore subject to reimbursement by defendants under § 3107. The trial court's decision was grounded in its reasoning that SPECT scans *in general* assist phy-

sicians in the diagnosis and treatment of traumatic brain injuries. However, absent from the trial court's decision was any reasoning with regard to whether brain SPECT scans were reasonably necessary for each particular insured. In our view, the court erred in not considering whether each particular expense at issue was reasonably necessary for each insured. Our conclusion is consistent with our Supreme Court's reasoning in *Nasser, supra.*

In *Nasser, supra,* our Supreme Court, speaking through Justice BOYLE, emphasized that an insurer cannot be held liable for reimbursement of expenses under § 3107 unless each particular expense is proved by the plaintiff to be reasonable and necessary.

> *[I]t is each particular expense that must be both reasonable and necessary.* The concept of liability cannot be detached from the specific payments involved, or expenses incurred . . . . Where a plaintiff is unable to show that a particular expense has been incurred for a reasonably necessary product and service, there can be no finding of a breach of the insurer's duty to pay that expense, and thus no finding of liability with regard to that expense. [*Nasser, supra* at 50 (emphasis supplied).]

The record here does not contain evidence to support plaintiff's assertion that each particular expense stemming from plaintiff's performance of brain SPECT imaging on defendants' insureds was reasonable and necessary. Plaintiff has failed to put forth any evidence addressing the condition of each individual insured, the injuries suffered, or the need for a brain SPECT scan relating to each individual. On this record, we cannot say "with certainty" that brain SPECT scans were reasonably necessary expenses in the treatment of each insured. *Id.* at 55.

In our view, the conflict among plaintiff's and defendants' expert witnesses, together with the dissension in the medical literature regarding whether SPECT scans are useful in diagnosing mild traumatic brain injury, created genuine factual issues sufficient to withstand summary disposition under MCR 2.116(C)(10). Under these circumstances, where (1) defendants vehemently contested the reasonableness and necessity of plaintiff's services with respect to their insureds, and (2) plaintiff did not prove that each expense was reasonably necessary for each insured, summary disposition was inappropriate, and the trial court incorrectly determined questions reserved to the trier of fact. *Nasser, supra* at 57; *Reed v Citizens Ins Co of America,* 198 Mich App 443, 453; 499 NW2d 22 (1993).

Further, in our view, determining that brain SPECT scans are reasonably necessary expenses as a matter of law without regard to the individual circumstances of each patient thwarts the policy underlying § 3107. In *McGill v Automobile Ass'n of Michigan,* 207 Mich App 402, 408; 526 NW2d 12 (1994), a panel of this Court recognized that insurance companies are not required to accept health-care providers' unilateral decisions about what constitutes reasonable medical expenses, because to do so would undermine the Legislature's purpose in enacting § 3107.

> [I]t is clear that the Legislature did not intend for no-fault insurers to pay all claims submitted without reviewing the claims for lack of coverage, excessiveness, or fraud. [*McGill, supra* at 408 (internal quotations and citation omitted).]

Consequently, if we were to affirm the trial court's determination that brain SPECT imaging is a reasonable and necessary expense under § 3107 as a matter of law under all circumstances, such action would in turn allow medical providers to recover expenses without being put to their proofs regarding whether a particular expense was reasonable and necessary. The *Nasser* Court expressly sought to avoid this result. *Nasser, supra* at 50.

On remand, the trial court shall conduct an evidentiary hearing to determine whether expert testimony and evidence relating to SPECT imaging are admissible under MRE 702 and *Davis-Frye*.[1] The party proffering the evidence bears the burden of demonstrating its acceptance in the medical community. *Anton v State Farm Mut Automobile Ins Co*, 238 Mich App 673, 679; 607 NW2d 123 (1999). Pursuant to MRE 702, the trial court is required to

> determine the evidentiary reliability or trustworthiness of the facts and data underlying an expert's testimony before that testimony may be admitted. To determine whether the requisite standard of reliability has been met, the court must determine whether the proposed testimony is derived from recognized [medical] knowledge. To be derived from recognized [medical] knowledge, the proposed testimony must contain inferences or assertions, the source of which rests in an application of [medical] methods. Additionally, the inferences or assertions must be supported by appropriate objective and independent validation based on what is known, e.g., scientific and medical literature. This is not to say, however, that the subject of the [medical] testimony must be known to a certainty. As long as the basic methodology and principles employed by an expert to reach a con-

---

[1] *People v Davis*, 343 Mich 348; 72 NW2d 269 (1955); *Frye v United States*, 54 US App DC 46; 293 F 1013 (1923).

clusion are sound and create a trustworthy foundation for the conclusion reached, the expert testimony is admissible no matter how novel. [*Nelson v American Sterilizer Co (On Remand)*, 223 Mich App 485, 491-492; 566 NW2d 671 (1997) (internal quotations and citations omitted).]

See also *Tobin v Providence Hosp*, 244 Mich App 626, 646-647; 624 NW2d 548 (2001).

Similarly, the trial court shall undertake the threshold determination whether under *Davis-Frye*, "it [has been] demonstrated that the evidence [relating to SPECT imaging in the treatment of mild traumatic brain injury] has gained general acceptance in the [medical] community." *Stitt v Holland Abundant Life Fellowship (On Remand)*, 243 Mich App 461, 468; 624 NW2d 427 (2000) (citation omitted); see also *Anton, supra* at 678-679.

If the court determines that the expert testimony and evidence relating to SPECT imaging satisfy the standards of MRE 702 and *Davis-Frye*, and are therefore admissible at trial, the ensuing determination, whether brain SPECT imaging was a reasonably necessary expense in the treatment of defendants' insureds pursuant to MCL 500.3107(1)(a), is a question reserved for the trier of fact. *Nasser, supra* at 55.

In Docket No. 219401, defendant ACIA also argues that the trial court erred in concluding that the doctrine of primary jurisdiction precluded it from considering ACIA's allegations that the proprietor of SPECT Imaging, Inc., engaged in misconduct in violation of the Public Health Code, MCL 333.1101 *et seq.*, by (1) referring patients to a facility in which he had an interest and (2) employing an individual who was not licensed to perform SPECT scans. We agree.

The applicability of the primary jurisdiction doctrine is a question of law we review de novo. *Michigan Basic Property Ins Ass'n v Detroit Edison Co*, 240 Mich App 524, 528; 618 NW2d 32 (2000). "No fixed formula exists for determining whether the doctrine of primary jurisdiction applies; each case must be decided on its own facts." *Cherry Growers, Inc v Agricultural Marketing & Bargaining Bd*, 240 Mich App 153, 161-162; 610 NW2d 613 (2000). However, when determining whether the doctrine of primary jurisdiction is applicable, we adhere to the following three-pronged test:

> First, a court should consider to what extent the agency's specialized expertise makes it a preferable forum for resolving the issue. Second, the court should consider the need for uniformity and consistency in resolution of the issue. Third, it should consider whether judicial resolution of the issue will have an adverse effect on the agency's performance of its regulatory responsibilities. [*Id.* at 162 (citations omitted).]

In our view, the trial court erred in concluding that the doctrine of primary jurisdiction precluded it from considering the issue. This is not a case where the doctrine of primary jurisdiction required the trial court to defer to the relevant licensing authority. As an initial matter, the circuit court, as a court of general jurisdiction, has original subject-matter jurisdiction of plaintiff's direct provider no-fault claim. MCL 600.605; see also *Farmers Ins Exchange v South Lyon Community Schools*, 237 Mich App 235, 241; 602 NW2d 588 (1999).

Further, the nature of the factual and legal questions presented are not "of a type to require agency expertise to evaluate." *Rinaldo's Constr Corp v Mich-*

*igan Bell Telephone Co*, 454 Mich 65, 72; 559 NW2d 647 (1997), citing *Attorney General v Diamond Mortgage Co*, 414 Mich 603, 615; 327 NW2d 805 (1982). Moreover, ACIA's allegations present a case of "basic issues of fact and law that the courts address on a regular basis." *Cherry Growers, supra* at 163; see also *Diamond Mortgage, supra* at 614. In our opinion, requiring the lower court to decide whether the alleged actions by these individuals violated the Public Health Code to the extent that plaintiff is unable to recover expenses under the no-fault act would not result in a "pervasive regulatory scheme" being "thrown out of balance." *Id.* at 614.

Given our conclusion regarding the trial court's grant of summary disposition, we need not address defendants' and plaintiff's alternate arguments on appeal. We reverse and remand in all cases for proceedings consistent with this opinion. We do not retain jurisdiction.