PSYCHOSOCIAL SERVICE ASSOCIATES, PC v
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

Docket No. 276193. Submitted June 3, 2008, at Detroit. Decided June 19, 2008, at 9:00 a.m.

Psychosocial Service Associates, P.C., brought an action in the 52-4 District Court against State Farm Mutual Automobile Insurance Company, seeking payment of no-fault personal protection insurance (PIP) benefits for neurobiofeedback (NBF) services rendered to an insured of the defendant. The defendant moved for partial summary disposition, arguing that because of violations of the Public Health Code (PHC), MCL 333.1101 *et seq.*, and the Professional Service Corporation Act (PSCA), MCL 450.211 *et seq.*, by the plaintiff, PIP benefits for the NBF services were precluded under MCL 500.3157 as not having been "lawfully rendered." The district court, William E. Bolle, J., denied the motion. The Oakland Circuit Court, Rudy J. Nichols, J., reversed. The plaintiff appealed, and the defendant cross-appealed.

The Court of Appeals *held*:

1. The primary-jurisdiction doctrine, under which initial resolution of issues within the special competence of an administrative agency is required for a claim in court, does not apply in this case to preclude consideration by the judiciary, instead of by the Board of Psychology, of whether the plaintiff's facility and staff members are properly licensed to provide NBF services. The courts are just as capable as the board of interpreting the statutes governing licensure of the practice of psychology when deciding whether the services fall within the practice of psychology and whether the plaintiff falls within an exception to the licensing requirement.

2. The district court properly denied the defendant's motion for partial summary disposition, and the circuit court improperly reversed that decision. There remains a question for the district court's determination regarding whether the NBF procedure used in this case was solely a biofeedback technique falling exclusively within the scope of psychology such that a licensed psychologist was required, or whether it can be characterized as the systematic application of knowledge derived from behavioral sciences that is within the scope of nursing, as psychotherapy that is within the

scope of social work, or as behavior modification that is within the scope of counseling such that those on the plaintiff's staff who were nurses, social workers, or counselors could have rendered the NBF services in question pursuant to MCL 333.18214(4) or (5), which provides exemptions from the licensing requirement to practice psychology. There also remains a genuine issue for the district court regarding whether the plaintiff's sole shareholder was required to be a licensed psychologist to determine whether there was a violation of the PSCA.

Reversed and remanded for further proceedings in the district court.

1. COURTS — JURISDICTION — ADMINISTRATIVE AGENCIES — PRIMARY JURISDICTION.

When determining whether the doctrine of primary jurisdiction applies in a given case, a court should consider to what extent the agency's specialized expertise makes it a preferable forum for resolving the issue, the need for uniformity and consistency in resolution of the issue, and whether the judicial resolution of the issue will have an adverse effect on the agency's performance of its regulatory responsibilities.

2. COURTS — JURISDICTION — ADMINISTRATIVE AGENCIES — PRIMARY JURISDICTION — PSYCHOLOGY.

Courts are just as capable as the Board of Psychology of interpreting the statutes governing licensure of the practice of psychology (MCL 333.18201[1][b]).

*Craig S. Romanzi & Associates, PC* (by *Craig S. Romanzi*), for the plaintiff.

*Scarfone & Geen, PC* (by *Joseph T. Longo*) (*Gross, Nemeth & Silverman, P.L.C.*, by *Mary T. Nemeth*, of counsel), for the defendant.

Before: WHITBECK, P.J., and O'CONNELL and KELLY, JJ.

O'CONNELL, J. In this no-fault case involving repayment for services rendered, plaintiff appeals by leave granted a circuit court order that reversed a district court order denying defendant's motion for partial summary disposition. We reverse the circuit

court order, reinstate the district court order, and remand to the district court for further proceedings.

We address plaintiff's jurisdictional question first. Plaintiff argues that whether plaintiff's facility and staff members are properly licensed to provide the services rendered is a regulatory matter that should be considered first by the Board of Psychology, because it has specialized knowledge and, therefore, is better suited to decide whether the services fall within the practice of psychology and whether plaintiff falls within an exception to the licensing requirement. We disagree.

We review de novo the applicability of the primary-jurisdiction doctrine because it is a question of law. *SPECT Imaging, Inc v Allstate Ins Co*, 246 Mich App 568, 580; 633 NW2d 461 (2001). Primary jurisdiction is applicable "when a claim may be cognizable in a court but initial resolution of issues within the special competence of an administrative agency is required." *Travelers Ins Co v Detroit Edison Co*, 465 Mich 185, 197; 631 NW2d 733 (2001) (citation omitted). Although the doctrine's applicability is determined by "its own facts" on a case-by-case basis, we utilize the following three-pronged test:

> First, a court should consider to what extent the agency's specialized expertise makes it a preferable forum for resolving the issue. Second, the court should consider the need for uniformity and consistency in resolution of the issue. Third, it should consider whether judicial resolution of the issue will have an adverse effect on the agency's performance of its regulatory responsibilities. [*SPECT, supra* at 580 (quotation marks and citation omitted.]

In the present case, we find that the district court was not required to defer to the board. The district court, not the board, has original subject-matter jurisdiction over a claim for no-fault benefits. *Id.* Defendant

was not seeking to have plaintiff and its staff members' licenses revoked, an issue squarely within a regulatory agency's sole discretion, see *Attorney General v Diamond Mortgage Co*, 414 Mich 603, 610-611; 327 NW2d 805 (1982), but rather sought the interpretation and application of a statute regarding no-fault benefits. The board does not have specialized knowledge that would make it the preferable forum. The Legislature defined the scope of psychology and the scope of the other fields in which plaintiff's staff members are licensed to practice. The courts are just as capable of interpreting those statutes as the board. Additionally, "requiring the lower court to decide whether these individuals violated the Public Health Code to the extent that plaintiff is unable to recover expenses under the no-fault act would not result in a 'pervasive regulatory scheme' being 'thrown out of balance.' " *SPECT*, *supra* at 581.

Because we find that the district court properly exercised jurisdiction, we move on to plaintiff's claim that the circuit court improperly reversed the district court's order and granted partial summary disposition to defendant to the extent any service fell with the definition of "biofeedback techniques." We agree.

We review de novo a trial court's grant of summary disposition. *Burden v Elias Bros Big Boy Restaurants*, 240 Mich App 723, 725; 613 NW2d 378 (2000). A motion under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim. *Id.* at 725-726. Summary disposition is only appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 726. "In reviewing the trial court's decision, we must consider the affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, and, giving the benefit of the doubt to the

nonmoving party, we must determine whether a genuine issue of material fact exists to warrant a trial." *Id.* Issues of statutory construction are also reviewed de novo. *Auto-Owners Ins Co v Allied Adjusters & Appraisers, Inc*, 238 Mich App 394, 396; 605 NW2d 685 (1999).

Under the no-fault act, an injured insured is entitled to the payment of personal protection insurance (PIP) benefits for "[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a). However, PIP benefit payments are limited under MCL 500.3157: "A physician, hospital, clinic or other person or institution *lawfully rendering treatment* to an injured person for an accidental bodily injury covered by personal protection insurance . . . may charge a reasonable amount for the products, services and accommodations rendered." (Emphasis added.) The issue is whether the services provided by plaintiff were "lawfully rendered" given plaintiff's alleged violations of the Public Health Code (PHC), MCL 333.1101 *et seq.*, and the Professional Service Corporation Act (PSCA), MCL 450.211 *et seq.*

"[O]nly treatment lawfully rendered, including being in compliance with licensing requirements, is subject to payment as a no-fault benefit." *Cherry v State Farm Mut Automobile Ins Co*, 195 Mich App 316, 320; 489 NW2d 788 (1992). However, services might be lawfully rendered even if a particular service is "excluded" from the scope of the provider's licensed field: " 'The purpose of the licensing statute is not to prohibit the doing of those acts that are excluded from the definition of [the field of practice], but to make it unlawful to do without a license those things that are within the definition.' " *Hoffman v Auto Club Ins Ass'n*, 211 Mich App 55, 65;

535 NW2d 529 (1995), quoting *Attorney General v Beno*, 422 Mich 293, 303; 373 NW2d 544 (1985). An excluded activity would be considered unlawful if it constituted the practice of another field without a license. *Hoffman*, *supra* at 65. However, "merely because [certain] activities may constitute the practice of [one specialized field, or even several], . . . does not thereby inevitably mean that they are not within the scope of [another]." *Beno*, *supra* at 332. Indeed, the PHC provides that its provisions "shall be liberally construed for the protection of the health, safety, and welfare of the people of this state." MCL 333.1111(2).

To determine if the circuit court properly determined that neurobiofeedback (NBF) falls exclusively within the scope of psychology, we must examine the various statutes under which plaintiff and its staff are licensed and compare them with other provisions of the PHC. Under the PHC, those licensed to practice medicine have the broadest grant of authority and provide services related to a patient's physical or mental health. MCL 333.17001(d). The following parameters are provided with respect to the practice of psychology:

> (a) "Psychologist" means an individual licensed under this article to engage in the practice of psychology.
>
> (b) "Practice of psychology" means the rendering to individuals, groups, organizations, or the public of services involving the application of principles, methods, and procedures of understanding, predicting, and influencing behavior for the purposes of the diagnosis, assessment related to diagnosis, prevention, amelioration, or treatment of mental or emotional disorders, disabilities or behavioral adjustment problems by means of *psychotherapy, counseling, behavior modification, hypnosis, biofeedback techniques, psychological tests, or other verbal or behavioral means*. The practice of psychology shall not include the practice of medicine such as prescribing drugs, performing

surgery, or administering electro-convulsive therapy. [MCL
333.18201(1) (emphasis added).]

Although several of the staff members at plaintiff's
clinic have master's degrees in psychology and limited
licenses, the statute specifically provides for two limi-
tations placed on such a license, one of which is "super-
vision by a psychologist who has a license other than a
limited license." MCL 333.18223(2). As there are no
fully licensed psychologists at plaintiff's clinic to super-
vise the staff members, no staff member, even those
with a master's degree in psychology and a limited
license, may practice psychology. Therefore, NBF can
only be "lawfully rendered" if it falls within the scope of
the other licenses of plaintiff's staff and is not exclu-
sively within the scope of psychology.

None of the "means" enumerated in MCL
333.18201(b) is defined in the statutes or administra-
tive rules, so we may consult dictionary definitions of
those terms. *Woodard v Custer*, 476 Mich 545, 561; 719
NW2d 842 (2006). " '[T]echnical words and phrases,
and such as may have acquired a peculiar and appro-
priate meaning in the law, shall be construed and
understood according to such peculiar and appropriate
meaning.' " *Id.*, quoting MCL 8.3a. Because the terms
involve the provision of health care and the terms may
have acquired a "peculiar and appropriate meaning" in
fields involving health care, it is appropriate to look to
medical dictionaries. *Woodard*, *supra* at 561.

"Psychotherapy" is defined in *The American Heri-
tage Medical Dictionary* (2007) as "the treatment of
mental and emotional disorders through the use of
psychological techniques designed to encourage com-
munication of conflicts and insight into problems, with
the goal being personality growth and behavior modifi-
cation." "Behavior modification" is defined as "the use

of basic learning techniques, such as conditioning bio-feedback, reinforcement, or aversion therapy, to teach simple skills or alter undesirable behavior." *Id.* "Bio-feedback," to which NBF is related, given its name, is defined as follows:

> The process of making involuntary and unconscious bodily functions (as the heartbeat) perceptible to the senses (of vision and hearing) in order to control them by conscious mental effect. [Bender, *Attorneys' Dictionary of Medicine* (2000).]

> [A] method of learning to modify a particular body function, as temperature, by monitoring it with the aid of an electronic device. [*Random House Webster's College Dictionary* (1997).]

There are also specific definitions for NBF, also known as neurotherapy and EEG biofeedback:

> Neurofeedback . . . , also called neurotherapy, neurobio-feedback or EEG biofeedback (EEGBF) is a therapy technique that presents the user with realtime feedback on brainwave activity, as measured by electrodes on the scalp, typically in the form of a video display, sound or vibration. The aim is to enable conscious control of brainwave activity. If brain activity changes in the direction desired by the therapist, a positive "reward" feedback is given to the individual, and if it regresses, either a negative feedback or no feedback is given (depending on the protocol). Rewards can be as simple as a change in the pitch of a tone or as complex as a certain type of movement of a character in a video game. This experience could be called operant conditioning for internal states. [*The Free Encyclopedia* <http://encyclopedia.thefreedictionary.com/Neurofeedback> (accessed May 23, 2008).]

Under this definition, it may be that the NBF procedure utilized by plaintiff is a "biofeedback technique." But, under the various additional definitions, it is also clear that "biofeedback" is a subset of "behavior modi-

fication," which in turn is a subset of "psychotherapy." We find that NBF clearly falls within the practice of psychology because it falls within the definitions of several different "means" in MCL 333.18201(b). However, this does not answer the question whether NBF is *exclusively* within the scope of the practice of psychology. Indeed, we find nothing in the statutory language that specifically restricts NBF to the practice of psychology. "A court must not judicially legislate by adding into a statute provisions that the Legislature did not include." *In re Wayne Co Prosecutor*, 232 Mich App 482, 486; 591 NW2d 359 (1998).

Initially, we note that MCL 333.18214 provides several exemptions from the licensing requirement to practice psychology:

> (4) This part does not prohibit a certified, licensed, registered, or otherwise statutorily recognized member of *any profession including* a lawyer, *social worker*, school counselor or marriage counselor from practicing his or her profession as authorized by law.

> (5) This part does not prohibit a clergyman, professional educator, or *professional counselor*, including an alcoholism or drug abuse counselor, *whose practice may include preventative techniques, counseling techniques, or behavior modification techniques* from practicing his or her profession consistent with his or her training and with a code of ethics for that respective profession. [Emphasis added.]

Both Steven White and James White are licensed registered nurses, and James White is also a licensed nurse practitioner. The practice of nursing is defined as

> the systematic application of substantial and specialized knowledge and skill, derived from the biological, physical and *behavioral sciences*, to the care, treatment, counsel, and health teaching of individuals who are experiencing

changes in the normal health processes or *who require assistance in the* maintenance of health and the prevention or *management of illness, injury, or disability.* [MCL 333.17201(1)(a) (emphasis added).]

James White is also a licensed social worker, and Donald Deering is a licensed social service technician. MCL 333.18501(1) defines the practice of social work:

(g) "Practice of social work at the master's level" means, subject to subsection (5), all of the following applied within the scope of social work values, ethics, principles, and advanced skills:

(*i*) The advanced application of the knowledge of human development and behavior and social, economic, and cultural institutions.

(*ii*) The advanced application of macro social work processes and systems to improve the social or health services of communities, groups, or organizations through planned interventions.

(*iii*) The application of specialized clinical knowledge and advanced clinical skills in the areas of *assessment, diagnosis, and treatment of mental, emotional, and behavioral disorders, conditions, and addictions.* Treatment methods include the provision of advanced social work case management and casework and individual, couple, family, or group counseling and *psychotherapy* whether in private practice or other settings.

(h) "Social service technician" means an individual registered under this article who is specially trained to practice only under the supervision of a licensed master's social worker or a licensed bachelor's social worker. [Emphasis added.]

MCL 333.18501(5) provides:

The practice of social work at the master's level does not include the practice of medicine or the practice of osteo-

pathic medicine and surgery, including, but not limited to, the prescribing of drugs or administration of electroconvulsive therapy.

Additionally, both nurses and social workers are required to take continuing education courses in pain and pain-symptom management, which may include courses regarding "behavior modification" or "behavior management." See Mich Admin Code, R 338.2908m(1) and 338.10601(2)(a).

Deering is also a licensed counselor who, pursuant to MCL 333.18101(b), is authorized "to engage in the practice of counseling." The practice of counseling is defined, in relevant part, as

the application of clinical *counseling principles, methods, or procedures* .... The practice of counseling *does not include the practice of psychology except for* those preventative techniques, counseling techniques, or *behavior modification techniques for which the licensed counselor or limited license counselor has been specifically trained.* [MCL 333.18101(d) (emphasis added).]

"Counseling principles, methods, or procedures" include the application of behavioral modification techniques. MCL 333.18101(a)(*ix*). As the definitions and statutory provisions above provide, the NBF procedure utilized by plaintiff can be characterized as "psychotherapy," which is within the scope of social work, or "behavior modification," which is within the scope of counseling. Because James White is certified by the Biofeedback Certification Institute of America for EEG biofeedback, he arguably meets the requirements under MCL 333.18101(d) of being specifically trained in what is potentially a "behavior modification technique." Accordingly, we conclude that there remains a question for the district court regarding how NBF should be characterized. Depending on how NBF is characterized, the

services provided by plaintiff and its staff may indeed have been "lawfully rendered."[1] Therefore, the district court properly denied defendant's motion for partial summary disposition, and the circuit court improperly reversed that decision.

Because we determine that there is a genuine issue for the district court regarding whether the NBF procedure utilized was solely a biofeedback technique falling exclusively within the scope of psychology, there also remains an issue of fact regarding whether plaintiff's sole shareholder was required to be a licensed psychologist before it can be determined if there was a violation of the PSCA. Accordingly, defendant was not entitled to summary disposition on this issue, regardless of the outcome of the pending appeal before our Supreme Court in *Miller v Allstate Ins Co (On Remand)*, 275 Mich App 649; 739 NW2d 675 (2007), lv gtd 480 Mich 938 (2007).

We reverse the circuit court order granting defendant's motion for partial summary disposition, reinstate the district court's dismissal of defendant's motion for partial summary disposition, and remand to the district court for further proceedings consistent with this opinion. We do not retain jurisdiction.

---

[1] We note that the district court intended to take "some evidence from people to educate [it]." We agree that "an evidentiary hearing at which experts from the licensing board or other qualified individuals could render their decision" would be appropriate in this situation and is consistent with the trial court's gatekeeping function under MRE 702. See *Chapin v A & L Parts, Inc*, 274 Mich App 122, 126; 732 NW2d 578 (2007).