**S T A T E   O F   M I C H I G A N**
**C O U R T   O F   A P P E A L S**

ADIA BLACKSHER,

       Plaintiff-Appellant,

and

SANDEEAH BLACKSHER,

       Plaintiff,

and

MCLAREN REGIONAL MEDICAL CENTER,

       Intervening Plaintiff-Appellant,

v

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

       Defendant-Appellee.

UNPUBLISHED
December 4, 2014

No. 312107
Genesee Circuit Court
LC No. 08-089055-NF

ADIA BLACKSHER,

       Plaintiff-Appellee,

and

SANDEEAH BLACKSHER,

       Plaintiff,

and

MCLAREN REGIONAL MEDICAL CENTER,

       Intervening Plaintiff-Appellee,

-1-

v                                                    No.   315678
                                                     Genesee Circuit Court
STATE FARM MUTUAL AUTOMOBILE                         LC No.   08-089055-NF
INSURANCE COMPANY,

                    Defendant-Appellant.

_____

Before:  GLEICHER, P.J., and SERVITTO and RONAYNE KRAUSE, JJ.

PER CURIAM.

        This insurance coverage dispute flows from a closed head injury allegedly suffered by plaintiff Adia Blacksher in a February 2007 automobile accident, and exacerbated in an April 2007 accident.  Blacksher's no-fault automobile insurer, defendant State Farm, initially covered treatment prescribed by Blacksher's doctors, primarily provided at intervening plaintiff McLaren Regional Medical Center.  State Farm's cessation of coverage led to this lawsuit.  A jury ultimately awarded Blacksher and McLaren less than $10,000 in additional payments.  The trial court thereafter denied State Farm's request for attorney fees based on its argument that the paucity of the verdict evinced the unreasonableness of plaintiffs' case.

        In these consolidated appeals, Blacksher and McLaren challenge the jury trial judgment, claiming it was internally inconsistent and against the great weight of the evidence, and that the trial court should have entered a judgment notwithstanding the verdict or ordered a new trial. Blacksher contests the trial court's treatment of her case, especially in relation to her presentation and questioning of the State Farm claims adjusters that handled this matter.  McLaren contends that the trial court abused its discretion in precluding its late submitted medical billing records from the trial evidence.  And State Farm appeals the denial of its request for attorney fees. Because we discern no errors in the trial court proceedings, we affirm.

                                    I. BACKGROUND

        On February 4, 2007, Blacksher was involved in a serious automobile accident and required emergency medical treatment.  It is undisputed that she sustained injuries to her ankle and hip.  She also claimed that she hit her head, leading to myriad symptoms, such as dizziness, headaches, and blurred vision.  Blacksher was a vehicle passenger during another accident on April 6, 2007, and was again transported to the hospital.  She thereafter reported dizziness, headaches, and memory problems.

        Trial evidence revealed that the emergency room physicians treating Blacksher on February 4, 2007, disagreed regarding whether their patient had hit her head and suffered any connected injury.  Dr. Tarik Wasfie asserted that he perceived a hematoma on Blacksher's scalp and that his patient complained of dizziness.  As a result, he diagnosed a concussion.  Dr. Wasfie acknowledged that emergency medical technicians (EMTs) at the accident scene evaluated

Blacksher using the "Glasgow Coma Scale" and gave Blacksher a perfect score.[1] Dr. Wasfie further acknowledged that Blacksher did not immediately complain of dizziness or head pain upon her arrival at the hospital, and her initial physical examination performed by an unnamed doctor revealed no cranial tenderness or swelling. Nine days after the first accident, Blacksher continued to report headaches and nausea. Dr. Wasfie prescribed a CT scan and MRI of Blacksher's head. Neither test revealed any bleeding in the brain. Dr. Wasfie opined that the negative test results did not rule out a head injury and referred Blacksher to a neurologist, Dr. Nasser Sabbagh.

Dr. Sabbagh saw Blacksher multiple times in 2007 and 2009, diagnosing her with post-concussion syndrome. Blacksher reported symptoms including headaches, dizziness, and memory problems. Dr. Sabbagh also noted "reactive depression." Dr. Sabbagh ordered an MRI and an EEG, both of which were normal. The doctor explained that head injuries cannot always be detected with MRIs or CT scans. Dr. Sabbagh referred Blacksher to Dr. Richard Weiss for neuropsychological testing.

Neither party presented the testimony of Dr. Weiss at trial. Dr. Sabbagh testified that Dr. Weiss's 2007 report opined that Blacksher was "having some cognitive deficits that are associated or compatible with traumatic brain injury." However, Dr. Sabbagh admitted that Dr. Weiss "felt that [Blacksher] does have some tendency to what we call somatization, like amplifying her complaints." Dr. Sabbagh further conceded that Blacksher's complaints of headaches, blurred vision, and dizziness could result from somatization or could be physical symptoms of depression, rather than a head injury.[2] Following Dr. Weiss's report, Dr. Sabbagh referred Blacksher to McLaren's head injury program, a multifaceted regimen offering physical, speech and occupational therapy, as well as social work components. Dr. Sabbagh placed Blacksher on complete medical leave from work, advised her not to drive, and prescribed attendant care services.

On cross-examination, State Farm's counsel elicited from Dr. Sabbagh that Blacksher withheld from him vital information regarding her medical history. Blacksher falsely told Dr.

---

[1] As described in Jones, *Glasgow Coma Scale*, 79 American J of Nursing 1551, 1551 (1979):

> The Glasgow Coma Scale (GCS) is an assessment tool used to describe level of consciousness. It was developed . . . to standardize observations of level of consciousness in patients with head injuries. . . . The scale has been subjected to extensive reliability tests, and has been proven to be a quick, accurate, and simple tool for evaluating neurological status.

Medical personnel must evaluate a score a patient in various categories. "A normal person would score 14." *Id.* at 1552. If a patient scores 7 or less, he or she is deemed to be in a coma. *Id.* Blacksher scored 15 points on the scale.

[2] Dr. Weiss conducted a second evaluation in 2009, and noted that Blacksher's cognitive scores actually declined over time. These scores would normally improve over time in a head injury patient receiving rehabilitative treatment.

Sabbagh that she had never suffered bouts of dizziness in the past. In 2001, however, Blacksher sought treatment for dizziness, headaches, and body aches (which she claimed to have lasted an entire year). Those symptoms were ultimately connected to a sinus infection. In 2004, Blacksher slipped and fell on ice, experiencing back injuries requiring physical therapy. At that time, Blacksher reported depression as well.

Dr. Ed Atty conducted Blacksher's initial evaluation for admission into the McLaren head injury program. Blacksher reported to Atty that she suffered from memory and concentration problems, headaches, dizziness, blurred vision, and neck and back pain. Dr. Atty acknowledged Blacksher's negative MRI and CT scans. Even so, he diagnosed Blacksher with mild traumatic brain injury and prescribed treatment through McLaren's program.

State Farm ordered a series of independent medical exams as well. Neurologist Leonard Sahn examined Blacksher on April 29, 2008. He found no objective symptoms and noted that Blacksher's diagnostic tests were normal. Dr. Sahn reviewed the medical records contemporaneous with the 2007 accidents and found no evidence of a head injury. Rather, the EMTs and one emergency room doctor identified no physical injury to Blacksher's head and found her oriented. In relation to Dr. Weiss's neuropsychological evaluation, Dr. Sahn opined that Blacksher's responses invalidated her Minnesota Multiphasic Personality Inventory (MMPI-2). Blacksher's profile was "nuts," nonsensical and indicative of no known mental condition, suggesting that Blacksher was "not even trying" or was purposely trying to skew the results. Even if Blacksher had hit her head in the accident and suffered headaches, dizziness, or memory loss as reported, those injuries would have resolved within a few weeks or months, Dr. Sahn opined.

Dr. Lisa Metler conducted a neuropsychological examination on State Farm's behalf in November and December of 2007. Dr. Metler's review of the medical records contemporaneous with the accidents also revealed no support for Blacksher's complaints of head injury. Dr. Metler questioned Dr. Weiss's diagnosis based on the MMPI-2 results. For example, Dr. Weiss noted memory loss, but Blacksher scored high on difficult memory evaluations in the inventory and low on easy tests. Dr. Metler questioned Dr. Weiss's decision to render a diagnosis given his own acknowledgement that the test results were invalid and evidenced that Blacksher was exaggerating or over-reporting her physical complaints. However, Dr. Metler's examination did reveal mental impairments, such as a borderline IQ and reduced information processing speed. While such impairments can be caused by a closed head injury, there were myriad other sources as well.

Dr. Joseph Femminineo, a physical medicine and rehabilitation specialist, conducted an IME on April 23, 2008. He reviewed Blacksher's medical records and test results and conducted his own neuromuscular musculoskeletal examination. Dr. Femminineo concluded that Blacksher's condition was normal and unremarkable and that any injuries she suffered likely resolved within three months of the accident. Based on his review and examination, Dr. Femminineo found unnecessary attendant care services and work and driving restrictions.

Finally, State Farm presented the testimony of Dr. Robin Hanks, a clinical neuropsychologist, who reviewed Dr. Weiss's reports but did not examine Blacksher in person. Dr. Hanks opined that Dr. Weiss should have made no diagnosis in 2007, given the invalidity of

Blacksher's MMPI-2 testing. Further, given the assessment that Blacksher is prone to exaggerate or over-report her symptoms, Dr. Weiss should not have rendered a diagnosis on subjective complaints with no objective support.

In relation to the payment of Blacksher's submitted bills, State Farm presented the testimony of claims representative Delon Bishop. Bishop recommended that Blacksher undergo IMEs after reviewing Dr. Weiss's 2007 report. State Farm initially paid $53,000 on Blacksher's behalf for her medical bills, attendant care and replacement services, and wage loss benefits. On October 2, 2008, however, State Farm denied Blacksher's claim and tendered no more payments on her behalf.

Based on this evidence, the jury determined that Blacksher had suffered an accidental bodily injury that arose out of the ownership, operation, or use of a motor vehicle as a result of the February 4 and April 6, 2007 accidents. The jury also agreed that Blacksher incurred allowable expenses arising out of the accidental bodily injury. The jury awarded only $8,012.80 to McLaren, however, as "the amount of allowable expenses owed to the plaintiff," including "only expenses not already paid by the defendant." The jury made no monetary award in relation to any other category of claimed expenses or any other provider. The jury further determined that none of State Farm's payments were overdue.

## II. CHALLENGES TO JURY VERDICT

Following trial, Blacksher and McLaren both sought a JNOV or a new trial, because the verdict was inconsistent or against the great weight of the evidence. Prior to trial, Blacksher had also sought summary disposition based on a perceived lack of evidence on State Farm's part. The trial court had denied the summary disposition motion, finding existing questions of material fact. It also denied the motion for JNOV or new trial, emphasizing:

> [W]hen the jury is here deciding the case, they bring their common sense to the courtroom. They also have the opportunity to re-review the evidence that was considered. They have the right to believe all, none or any part of any witness's testimony. They certainly have the right to evaluate the exhibits that are admitted in any way that makes common sense to them. So, when you look at this issue, I don't think that it's just simply one of whether or not it logically flows mathematically. I think that there is more that goes into this consideration than just that.
>
> * * *
>
> Here, a reasonable jury could have listened to the testimony and could have believed parts of the testimony and not believed other parts. They certainly have the right to eyeball the witnesses and determine their believability and credibility from what they observe. They have the right to decide, you know, whether certain treatment was reasonable and necessary. Even though the experts are arguing on both sides, they still have the right to decide what it is that they believe; and I think, when you look at the evidence in the light most favorable to

the non-moving party, . . . the only rationale that the Court could see, . . . is that the jury didn't believe . . . the expert witnesses to the full extent.

[T]hey certainly believed that Mrs. [sic] Blacksher suffered an injury; that it arose out of the operation of a motor vehicle, et cetera, but they did not believe obviously . . . that the level of treatment that was given to Mrs. Blacksher was necessary and reasonable; and . . . I think certainly a reasonable jury could have come to that conclusion by looking at the evidence in this case, because they may have felt that maybe some things that she was treated for, she should have been treated for, and other things she should not have been; they may have believed, as [defense counsel] pointed out, that she was faking and feigning a lot of this and that she wasn't entitled to any recovery for certain aspects of her treatment. So I can't say that the jury was unreasonable . . . .

## A. STANDARDS OF REVIEW

We review de novo a trial court's resolution of a JNOV motion. *Genna v Jackson*, 286 Mich App 413, 417; 781 NW2d 124 (2009). In doing so, we must view "the evidence and all legitimate inferences arising therefrom in the light most favorable to the nonmoving party to determine if a party was entitled to judgment as a matter of law." *Id*. "The motion should be granted only when there is insufficient evidence presented to create a triable issue for the jury. When reasonable jurors could honestly reach different conclusions regarding the evidence, the jury verdict must stand." *Id*. (citations omitted).

A trial court has the discretion to grant a new trial and this Court may only interfere with its ruling when the trial court abuses that discretion. *Kelly v Builders Square, Inc*, 465 Mich 29, 34; 632 NW2d 912 (2001). A motion for new trial is supportable when, for example, an irregularity in the proceedings denied a party a fair trial, the verdict was "clearly or grossly inadequate or excessive," or the verdict was against the great weight of the evidence. See MCR 2.611(A)(1)(a), (d), (e).

When a party challenges a jury's verdict as against the great weight of the evidence, this Court must give substantial deference to the judgment of the trier of fact. If there is any competent evidence to support the jury's verdict, we must defer our judgment regarding the credibility of the witnesses. The Michigan Supreme Court has repeatedly held that the jury's verdict must be upheld, even if it is arguably inconsistent, if there is an interpretation of the evidence that provides a logical explanation for the findings of the jury. Every attempt must be made to harmonize a jury's verdicts. Only where verdicts are so logically and legally inconsistent that they cannot be reconciled will they be set aside. [*Allard v State Farm Ins Co*, 271 Mich App 394, 406-407; 722 NW2d 268 (2006) (quotation marks, brackets, and citations omitted).]

"This Court reviews de novo a trial court's decision on a motion for summary disposition." *Hackel v Macomb Co Comm*, 298 Mich App 311, 315; 826 NW2d 753 (2012). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the

nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). "Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

## B. ANALYSIS

Entitlement to personal protection insurance (PIP) benefits under the no-fault act is governed by MCL 500.3105. Under MCL 500.3105(1), "an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of" the no-fault act. There are "two threshold requirements" to establish entitlement to PIP benefits: the plaintiff must show that (1) "the claimed benefits are causally connected to the accidental bodily injury arising out of the automobile accident" and (2) the injuries arose out of or were caused by the ownership, operation, maintenance, or use of a motor vehicle. *Douglas v Allstate Ins Co*, 492 Mich 241, 257; 821 NW2d 472 (2012) (quotation and citation omitted).

Not all costs incurred by an accident victim are recoverable as PIP benefits. MCL 500.3107(1) defines the types of recoverable benefits:

> Except as provided in subsection (2), personal protection insurance benefits are payable for the following:

> (a) Allowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services, and accommodations for an injured person's care, recovery, or rehabilitation. . . .

> (b) Work loss consisting of loss of income from work an injured person would have performed during the first 3 years after the date of the accident if he or she had not been injured. . . .

> (c) Expenses not exceeding $20.00 per day, reasonably incurred in obtaining ordinary and necessary services in lieu of those that, if he or she had not been injured, an injured person would have performed during the first 3 years after the date of the accident, not for income but for the benefit of himself or herself or of his or her dependent.

At issue in this trial was whether Blacksher incurred "allowable expenses." "To be reimbursed for an 'allowable expense' under MCL 500.3107(1)(a), a plaintiff bears the burden of proving that (1) the charge for the service was reasonable, (2) the expense was reasonably necessary, and (3) the expense was incurred." *Spect Imaging, Inc v Allstate Ins Co*, 246 Mich App 568, 574; 633 NW2d 461 (2001). The expense must also be connected to "an injured person's care, recovery, or rehabilitation." *Douglas*, 492 Mich at 259. If an expense is deemed not "allowable"—i.e. the charge was unreasonable, the expense was not actually incurred, the service was not reasonably necessary or the need did not flow from the accident—then no right

to benefits arises. *Nasser v Auto Club Ins Ass'n*, 435 Mich 33, 49, 52 n 7; 457 NW2d 637 (1990). The plaintiff must prove that each expense was both reasonable and necessary; a failure of proof regarding a particular expense renders that expense unallowable. *Id*. at 50.

Our review of the record does not support plaintiffs' claims that the jury verdict was against the great weight of the evidence. The jury concluded that Blacksher incurred some allowable expenses in relation to her automobile accident injuries. The jury could award benefits only to the extent that it found by a preponderance of the evidence that the services were reasonably necessary. *Spect Imaging*, 246 Mich App at 633. And the jury was limited to awarding only those benefits left unpaid after State Farm's $53,000 remittance on Blacksher's behalf. The jury concluded that State Farm had already paid nearly all of Blacksher's allowable expenses.

The conclusion that Blacksher was injured and therefore was entitled to some benefits is supported by the testimony of Doctors Wasfie, Sabbagh, and Atty. However, State Farm presented evidence that Blacksher's injuries were not as severe or long lasting as she claimed. Specifically, Dr. Sahn opined that the symptoms of any head injury suffered by Blacksher would have resolved within a few weeks or months of the accident. Dr. Femminineo examined Blacksher in April 23, 2008, and discerned no remaining injury despite that her personal physicians continued to provide care. And Doctors Metler and Hanks called into question the credibility of Blacksher's physicians by emphasizing the impropriety of rendering a head injury diagnosis with no objective support when the patient has a tendency to over-report and falsify symptoms. We may not interfere with the jury's assessment and weight of the various testimony and medical opinions. *People v Lemmon*, 456 Mich 625, 636; 576 NW2d 129 (1998). Accordingly, we discern no grounds for granting a new trial or a JNOV, and the trial evidence rendered moot Blacksher's pretrial motion for summary disposition.

In her appellate brief, Blacksher continues that the verdict was against the great weight of the evidence because State Farm failed to rebut the presumption that it unreasonably refused to pay no-fault benefits within 30 days of the submission of reasonable proof of loss. See MCL 500.3142(2) ("[PIP] benefits are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained."). We agree that a no-fault insurance provider should not delay in rejecting an insured's claim while the insured continues to accumulate costs for services. Here, however, State Farm paid $53,000 of Blacksher's incurred costs until the IMEs supported that Blacksher no longer (or never) needed the provided medical treatment and rehabilitation. In the jury's estimation, Blacksher did not meet her burden of establishing additional allowable expenses beyond $8,012.80. Besides this de minis amount, no PIP benefits could have been overdue. If the expenses are not allowable, they simply do not qualify as PIP benefits under the no-fault act.

Blacksher also challenges the jury's failure to award transportation costs to those treatments at McLaren for which the jury found she was entitled to benefits. Blacksher's mother testified at trial that she drove Blacksher to all her appointments and requested reimbursement for her mileage. Blacksher's mother conceded that State Farm had already paid some of her transportation expenses. The witness could not recollect when State Farm discontinued those payments. It is possible that the jury determined that Blacksher had already recovered all reasonably necessary, incurred transportation costs. Had Blacksher not stipulated to such a

simplistic verdict form, we may have been able to evaluate this claim in more detail. As there is record support for the denial of additional transportation costs and in light of Blacksher's stipulation, we discern no grounds for relief. See *Hodge v Parks*, 303 Mich App 552, 556; 844 NW2d 189 (2014) ("A party cannot stipulate with regard to a matter and then argue on appeal that the resulting action was erroneous.").

In its appellate brief, McLaren argues that the verdict was inconsistent because the jury found that Blacksher incurred allowable expenses in her treatment with Doctors Sabbagh and Atty but awarded no recovery for those bills. McLaren argued further inconsistency in the jury's decision to award payment to McLaren for treatment prescribed by Doctors Sabbagh and Atty but not to the doctors in prescribing the treatment. However, the evidence revealed that State Farm had already made some payments to Doctors Sabbagh and Atty. Bishop testified that the $53,000 in benefits paid by State Farm "encompassed medical bills" as well as "some attendant care pay, wage loss benefits and a week of replacement services." She asserted that State Farm had paid some but not all of Dr. Atty's bills. State Farm provided payment to Dr. Atty through May 12, 2008. And Bishop testified that State Farm recompensed Dr. Sabbagh for approximately $1,500 in treatment. From this evidence, a reasonable jury could determine that State Farm had already met its duty of paying allowable expenses incurred with these doctors.

McLaren also challenges the adequacy of the verdict because the benefits awarded— $8,012.90—does not match any particular unpaid bill or combination of unpaid bills in the record.[3] However, McLaren cites no authority establishing that a verdict must be deemed inconsistent unless the parties or the court can mathematically reconstruct precisely how the jury determined the amount that it awarded. "A party cannot simply announce a position and expect the court to search for authority to sustain or reject that position." *Hodge*, 303 Mich App at 557.

McLaren also contends that the issue of its damages must be retried because the jury did not award the full requested amount of reimbursement for medical treatment. McLaren contends that the jury was required to find either that the entirety of treatment provided to Blacksher was necessitated by her accident or that none of the services were so connected. McLaren mischaracterizes the evidence. There was evidence suggesting that Blacksher did suffer a head injury, but that the symptoms resolved sooner than alleged by Blacksher and her doctors. And the jury concluded that Blacksher incurred allowable expenses, not necessarily that all of her expenses were allowable. Accordingly, the record supported the jury's conclusion that only a portion of the McLaren medical bills amounted to allowable expenses.

### III. ABSENCE OF MATERIAL WITNESS

As noted, State Farm presented the testimony of Bishop, a claims representative who worked on Blacksher's file. During Blacksher's deposition of Bishop, counsel discovered that

---

[3] McLaren contends that the jury was limited to awarding benefits accumulated on a monthly basis because the court precluded McLaren's medical bills and the jury saw only a monthly accounting spreadsheet. As discussed later in this opinion, the majority of McLaren's bills were actually presented to the jury through the State Farm case file.

another State Farm claims representative, Lori Holguin, had originally been assigned the matter, and made several critical coverage decisions early in the case. Blacksher subpoenaed Holguin before trial, which was originally scheduled to begin in April 2010. The trial was then adjourned three times. Each time, Blacksher served a new subpoena. However, despite that Blacksher had deposed Bishop, she never sought to depose Holguin.

On the first day of trial, April 19, 2011, plaintiff's counsel indicated that he had been unable to locate Holguin to serve her with a subpoena for the current trial. Partway through trial, it was revealed that Holguin was suffering some health issues that rendered her unavailable to testify at trial or to appear for a deposition. The trial court did not disclose the nature of Holguin's ailment, but indicated that it began approximately one week before trial and made her unavailable indefinitely. The trial court denied Blacksher's request to once again adjourn the trial until Holguin could be present. Blacksher now contends that Holguin's role in managing the case file was more critical than Bishop's and that she was prejudiced by the inability to question this witness. Accordingly, Blacksher contends, the court's failure to grant a continuance warrants a new trial.

We review for an abuse of discretion a trial court's decision on a motion for a continuance. *Soumis v Soumis*, 218 Mich App 27, 32; 553 NW2d 619 (1996). The party seeking the continuance or adjournment must establish good cause and that the adjournment is necessary to "promote the cause of justice." *Zerillo v Dyksterhouse*, 191 Mich App 228, 230; 477 NW2d 117 (1991); MCR 2.503(D)(1). A motion for adjournment based on a witness's unavailability must be made as soon as possible after learning the facts. MCR 2.503(C)(1). "An adjournment may be granted on the ground of unavailability of a witness or evidence only if the court finds that the evidence is material and that diligent efforts have been made to produce the witness or evidence." MCR 2.503(C)(2).

Here, the trial court's decision not to adjourn trial until Holguin became available fell within the range of reasonable outcomes. Trial had already been adjourned multiple times, the case was nearly three years old, and the original trial date was nearly a year before the date on which trial actually occurred. A communication from Holguin's doctor to the trial court indicated that Holguin's medical condition rendered her unavailable for an indefinite time period. Further, Blacksher knew about Holguin long before trial and yet failed to depose her.

Moreover, the record does not support Blacksher's contention that Holguin's absence was prejudicial. State Farm claims representative Bishop was involved in handling Blacksher's claim, exhibited familiarity with the file, and was available for cross-examination at trial. Blacksher made no offer of proof regarding the content of Holguin's potential testimony. Moreover, the point of this testimony, as expressed by Blacksher, was immaterial to the issues at trial. Blacksher contends that she needed to question Holguin about her handling of the claim file to establish that State Farm unreasonably delayed making payments. The central issue at trial was whether Blacksher incurred allowable expenses, which revolved around the conflicting medical testimony concerning the necessity of Blacksher's treatment. Holguin's handling of the claim was a minor issue in comparison. Overall, we are not convinced that the failure to adjourn trial constituted an abuse of discretion.

## IV. COURT CONTROL OF QUESTIONING OF BISHOP

Blacksher argues that the trial court "rushed" her attorney's cross-examination of Bishop and improperly sustained objections to questions posed by her counsel, thereby hindering the presentation of her case. Blacksher failed to preserve her challenge to the trial court's exclusion of evidence through the sustaining of objections by making an offer of proof in the trial court. See *Detroit v Detroit Plaza Ltd Partnership*, 273 Mich App 260, 291; 730 NW2d 523 (2006), citing MRE 103(a)(2). While we would generally review such an evidentiary challenge for an abuse of discretion, *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010), our review of unpreserved issues is limited to plain error affecting substantial rights. *King v Oakland Co Prosecutor*, 303 Mich App 222, 239; 842 NW2d 403 (2013).

More damaging to her chances on appeal than the lack of preservation, Blacksher fails to specify the exact evidentiary rulings that she is challenging. Instead, Blacksher cites several dozen pages of the trial transcripts, without explaining which rulings she disputes or the legal bases for her disagreement with the trial court's decisions. In general, Blacksher contends that the trial court was "frustrated" with the pace of cross-examination and prevented her counsel from asking certain questions because they had already been asked. This was prejudicial, Blacksher contends, because it was sometimes necessary to cover certain topics more than once because they were relevant to different issues.

"An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give issues cursory treatment with little or no citation of supporting authority. An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *Houghton ex rel Johnson v Keller*, 256 Mich App 336, 339-340; 662 NW2d 854 (2003) (citations omitted). "This Court will not search the record for factual support for a party's claim." *McIntosh v McIntosh*, 282 Mich App 471, 485; 768 NW2d 325 (2009). Here, Blacksher cited a large swath of the transcript and expects this Court to ascertain the specific rulings being challenged and the legal bases for those challenges. We therefore deem this issue abandoned by inadequate briefing. *Houghton*, 256 Mich App at 339-340.

Moreover, Blacksher's argument that she was "rushed" in presenting proofs and in cross-examining Bishop is devoid of merit. MRE 611(a) provides that the trial court "shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence" at trial, to "avoid needless consumption of time." This case was tried over a course of 11 days. During that time, Blacksher was afforded more than ample opportunity to present witnesses and exhibits in her case-in-chief and to cross-examine defense witnesses. Defense counsel's direct examination of Bishop covers 13 transcript pages, whereas Blacksher's cross-examination covers 152 pages. The sheer length of cross-examination in comparison to direct reflects that Blacksher's counsel was not "rushed." And Blacksher has identified no additional evidence or testimony she would have presented had she not been "rushed." Blacksher has thus failed to establish that any evidentiary error was outcome determinative.

In a related argument, Blacksher contends that, when sustaining objections to her counsel's questions of Bishop, the trial court made derogatory or prejudicial comments about her counsel in front of the jury. Blacksher also failed to preserve this challenge by raising a

contemporaneous objection in the trial court, see *People v Sardy*, 216 Mich App 111, 117-118; 549 NW2d 23 (1996), again limiting our review to plain error. *King*, 303 Mich App at 239. In determining whether a trial court's comments are improper and prejudicial, we must consider the comments in context. *Dykema Gossett, PLLC v Ajluni*, 273 Mich App 1, 18; 730 NW2d 29 (2006), vacated in part on other grounds 480 Mich 913 (2007). Reversal is not warranted if the record reflects that the verdict was based on the jury's review of the evidence rather than the an opinion expressed by the trial court. *Id*.

"[A] trial judge has wide discretion and power in matters of trial conduct. . . . This power, however, is not unlimited." *City of Lansing v Hartsuff*, 213 Mich App 338, 349; 539 NW2d 781 (1995) (quotation marks and citation omitted). Reversal is required if a trial court pierces the veil of judicial impartiality. *Id*. A court pierces the veil of judicial impartiality when its conduct or comments have a tendency to unduly influence the jury and deprive a party of a fair and impartial trial. *Id*. at 350. Challenged remarks must be considered in context to determine whether they were improper and prejudicial. *Dykema Gossett*, 273 Mich App at 18. The fact that a court's remarks are improper does not by itself establish the denial of a fair trial; the record must demonstrate that the court's comments reflected bias and prejudiced the jury. *Id*. at 20.

Blacksher again fails to identify with specificity the comments to which she objects, generally asserting that the trial court "inferred [sic] that [her counsel] was not being forthright in the representations he was making and testimony he was attempting to elicit from Ms. Bishop. In addition, there was an influx of frustration clearly portrayed in front of the jury about the length of time it was taking to cover a lot of these intricate issues." Our review of the record reveals no derogatory comments concerning Blacksher's counsel made in front of the jury.

At one point, defense counsel objected that plaintiff's counsel "testif[ied]" by reading from an exhibit during cross-examination of Bishop and took the material out of context. In overruling the objection, the trial court expounded:

> [Y]ou have the right to conduct your examination as you see fit. However, in my opinion lawyers' credibility rise or fall on what they say before this jury and if the lawyers are misquoting, misinterpreting things before a jury the jurors are going to know it and so I would just caution any lawyer to always be candid about what they say to the jury and I'm not suggesting that you're not. I'm just saying that based on his objection. Now proceed . . . .

This comment was not prejudicial. The court merely responded to a defense objection that plaintiff's counsel took information in an exhibit out of context. The court *overruled* the objection, made general statements about how it is important for *any* lawyer's credibility to be candid with the jury, and immediately clarified that it was not implicating plaintiff's counsel. Viewed in context, the remark was not improper. Although the court later expressed concerns that plaintiff's counsel was spending too much time cross-examining Bishop, those comments were made outside of the jury's presence. Accordingly, we discern no grounds for relief.

## V. EXCLUSION OF MEDICAL BILLS

Blacksher and McLaren both challenge the trial court's denial of McLaren's motion to admit its medical bills at trial. The court excluded this evidence because McLaren did not comply with the court's pretrial scheduling order.

Trial courts possess authority to set reasonable deadlines in scheduling orders and to enforce those deadlines. See MCR 2.401(B)(2); *Kemerko Clawson, LLC v RxIV, Inc*, 269 Mich App 347, 349; 711 NW2d 801 (2005). A trial court has "discretion to decline to entertain actions beyond the agreed time frame. Were the rules not so construed, scheduling orders would quickly become meaningless." *People v Grove*, 455 Mich 439, 469; 566 NW2d 547 (1997), superseded on other grounds by MCR 6.310(B) as stated in *People v Franklin*, 491 Mich 916 (2012). "[T]his construction promotes the efficient management of the trial court's docket and is consistent with . . . MCR 1.105," *Kemerko Clawson, LLC*, 269 Mich App at 350, which requires that court rules be construed "to secure the just, speedy, and economical determination of every action . . . ."

We discern no abuse of discretion in the trial court's ruling. McLaren ignored the time requirements in the court's scheduling order for exchanging exhibit lists. The record reflects that McLaren had notice of and received the pretrial scheduling order, contrary to its appellate contention, as it asked for extensions in relation to other deadlines. And McLaren never exchanged the proposed exhibit with State Farm before trial, in contravention of the order. Defense counsel therefore had no opportunity to review the exhibit as presented by McLaren. In any event, approximately one-half of McLaren's bills were actually admitted into evidence through State Farm's claim file. Further, the parties presented other exhibits from which the jury could calculate the amount owed to McLaren, including explanation of benefit forms, letters from State Farm, and McLaren's accounting spreadsheet. During closing argument, McLaren's counsel told the jury that the spreadsheet provided "all of the information that I believe will help you in terms of making your calculation. It gives you the account number, dates of service, the date it was billed, the amount it was billed for, the date it went past due which by law is thirty days after the day it goes out." The availability of these other exhibits significantly mitigated any prejudice arising from the exclusion of McLaren's medical bills exhibit. Accordingly, plaintiffs cannot support their request for relief.

## VI. ATTORNEY FEES

Finally, in Docket No. 315678, State Farm argues challenges the denial of its motion for attorney fees under MCL 500.3148(2). "Under the 'American rule,' attorney fees are not recoverable as an element of costs or damages unless expressly allowed by statute, court rule, common-law exception, or contract." *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005). MCL 500.3148(2) provides an exception to this rule: "An insurer may be allowed by a court an award of a reasonable sum against a claimant as an attorney's fee for the insurer's attorney in defense against a claim that was in some respect fraudulent or so excessive as to have no reasonable foundation."

The decision to award or deny attorney fees under MCL 500.3148(2) is reviewed for an abuse of discretion. An abuse of discretion occurs when the trial

court's decision is outside the range of reasonable and principled outcomes. However, for purposes of MCL 500.3148(2), a trial court's findings regarding the fraudulent, excessive, or unreasonable nature of a claim should not be reversed unless they are clearly erroneous. A decision is clearly erroneous when a reviewing court is left with a firm and definite conviction that a mistake was made by the lower court. Any issues regarding what legally constitutes fraud in some respect, excessiveness, and an unreasonable foundation are questions of law subject to de novo review. [*Gentris v State Farm Mut Auto Ins Co*, 297 Mich App 354, 361; 824 NW2d 609 (2012) (quotation marks and citations omitted).]

State Farm sought attorney fees arguing that Blacksher's and McLaren's claims were so excessive as to have no reasonable foundation. Specifically, plaintiffs collectively sought more than $630,000 in benefits, McLaren alone was awarded recovery, and the jury awarded McLaren less than 10% of its demand and less than 1.5% of the total damages sought. State Farm also references the medical testimony supporting its position that Blacksher either did not sustain a traumatic brain injury or that she would have recovered from any injury within a few months as supporting the unreasonableness of plaintiffs' claims.

As noted previously, there was conflicting evidence regarding the existence and severity of Blacksher's injuries. Accordingly, plaintiffs' quest for allowable expenses was not unreasonable or fraudulent. The small size of the jury's award also does not support that plaintiffs' claim was unreasonable or excessive. Although the disparity between the amount demanded and the ultimate award may comprise *evidence* that the initial claims were excessive, that does not mean that the disparity *conclusively* established that the claims were excessive. Given the conflicting medical testimony presented to the jury, the trial court did not clearly err by rejecting State Farm's contention that plaintiff's claims were so excessive as to lack a reasonable foundation.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Deborah A. Servitto
/s/ Amy Ronayne Krause