KAUFMANN *v.* STATE BOARD OF REGISTRATION FOR
ARCHITECTS, PROFESSIONAL ENGINEERS, &
LAND SURVEYORS.

1. LICENSES—GRANDFATHER CLAUSE—PROFESSIONAL ENGINEERS—AC-
TIVE PRACTICE.

The purpose of the so-called grandfather clause in act licensing
and regulating the practice of professional engineering is to
relax the requirements for registration as applied to one who
has been engaged in the active practice as a professional engi-
neer for at least 12 years previous to the effective date of the
act (Act No. 240, § 12, Pub. Acts 1937).

2. SAME—PROFESSIONAL ENGINEERS—REGISTRATION WITHOUT EXAMI-
NATION.

The act licensing and regulating the practice of professional
engineering does not require a college degree in engineering,
or its equivalent, to qualify under the so-called grandfather
clause entitling applicants to license without examination upon
proof of active practice as an engineer for 12 years previous to
effective date of the act (Act No. 240, § 12, Pub. Acts 1937).

3. SAME—PROFESSIONAL ENGINEERING—DEFINITION—STATUTES.

The term "the practice of professional engineering," as defined
in act licensing and regulating such profession, is used in de-
termining whether or not applicant for registration thereunder
qualified under so-called grandfather clause for license without
examination (Act No. 240, § 12, Pub. Acts 1937).

4. MANDAMUS—PROFESSIONAL ENGINEERS—REGISTRATION WITHOUT
EXAMINATION—EVIDENCE.

Where applicant for registration without examination as a pro-
fessional engineer showed he had been continuously engaged in
active practice in such capacity for more than 12 years pre-
vious to January 1, 1938, such record should have been accepted
by the board of registration as conclusive evidence of his right
to registration under the so-called grandfather clause, hence

he was entitled to writ of mandamus compelling board to grant a certificate of registration (Act No. 240, § 12, Pub. Acts 1937).

Petition by Walter J. C. Kaufmann for writ of mandamus to compel the State Board of Registration for Architects, Professional Engineers, and Land Surveyors to grant him a license as a professional engineer. Submitted November 30, 1945. (Docket No. 38, Calendar No. 42,999.) Writ granted January 7, 1946.

*Leithauser & Babcock,* for plaintiff.

*John R. Dethmers,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Daniel J. O'Hara* and *Ernest O. Zirkalos,* Assistants Attorney General, for defendant.

Boyles, J. The appellant has filed a petition for the writ of mandamus to be directed to the defendant board, to compel it to grant appellant a certificate of registration as a professional engineer. We granted the appellant leave to appeal in the nature of mandamus from the action of the defendant board denying such registration.

The case involves a construction of the so-called "grandfather clause" in the act to license and regulate the practice of architecture, professional engineering and land surveying (Act No. 240, Pub. Acts 1937, as amended by Act No. 294, Pub. Acts 1941 [Comp. Laws Supp. 1940, 1945, §§ 8689–1—8689–27, Stat. Ann. 1945 Cum. Supp. §§ 18.84(1)–18.84(27)]). The particular issue here involved relates to professional engineering only.

Section 1 of the act (Comp. Laws Supp. 1940, § 8689–1, Stat. Ann. 1945 Cum. Supp. § 18.84[1]) provides:

"In order to safeguard life, health and property, any person practicing or offering to practice the profession of architecture, profession of engineering or of land surveying, shall hereafter be required to submit evidence that he is qualified so to practice and shall be registered as hereinafter provided; and it shall be unlawful for any person to practice or to offer to practice the profession of architecture, the profession of engineering or of land surveying, * * * unless such person has been duly registered or exempted under the provisions of this act."

"Professional engineer" and "the practice of professional engineering" are defined in section 2 of the act (Comp. Laws Supp. 1945, § 8689–2, Stat. Ann. 1945 Cum. Supp. § 18.84[2]), as follows:

"The term 'professional engineer' as used in this act shall mean a person who, by reason of his knowledge of mathematics, the physical sciences, and the principles of engineering, acquired by professional education and practical experience, is qualified to engage in engineering practice as hereinafter defined.

"The practice of professional engineering within the meaning and intent of this act includes any professional service, such as consultation, investigation, evaluation, planning, design, or responsible supervision of construction in connection with any public or private utilities, structures, buildings, machines, equipment, processes, works, or projects, wherein the public welfare, or the safeguarding of life, health, or property is concerned or involved, when such professional service requires the application of engineering principles and data, except as hereinafter defined."

The act became effective January 1, 1938. Section 12 of the act (Comp. Laws Supp. 1940, § 8689–12, Stat. Ann. 1945 Cum. Supp. § 18.84[12]), after setting forth the requirements for taking an ex-

amination for registration under the act, provides as follows:

"At any time within five years after this act becomes effective the board shall accept as conclusive evidence that an applicant is qualified for registration without examination, as an architect or as a professional engineer, a specific record of at least twelve years of active practice as an architect, or as a professional engineer, previous to the effective date of this act."

Counsel are in substantial agreement as to the facts in the case. On December 31, 1942, appellant filed with defendant board an application for registration without examination as a professional engineer under the provision last above quoted. The application contained a specific record of the active practice by the appellant in planning, designing, evaluating and constructing residential, commercial and industrial buildings for a period of more than 12 years prior to the effective date of said act. The application was accompanied by the statutory fee, six letters of reference, and various exhibits. The first letter, from a person describing himself as a plant engineer, attested to the ability of appellant to do "contracting work," and set forth that appellant "is able to lay out and construct along the engineering line any building, both private home or commercial, according to code requirements." The second letter, from an architect, recommended the appellant as being "well versed and capable in all phases of construction work." The third letter, from the vice-president of an iron works, recommended appellant upon "his ability in the construction of commercial and industrial buildings" and as "one of the most capable general contractors in the city." A fourth letter recommended the appellant as an "architect and builder" of a "new plant" for

the Detroit Rendering Company. The fifth letter stated that the appellant "constructed various buildings for our company * * * designed and planned by the Kaufmann Company under the personal direction and supervision of W. J. C. Kaufmann."' A sixth letter stated that he ranks "Mr. Kaufmann with the best in Detroit, in connection with the design, practical engineering and construction of commercial and industrial building." Apparently these recommendations were filed to comply with section 13 (Comp. Laws Supp. 1940, § 8689-13, Stat. Ann. 1945 Cum. Supp. § 18.84[13]), which requires not less than five references.

Appellant submitted to the board a detailed record of his practice of engineering, and the plans and designs of 10 residential buildings and 8 industrial buildings in which the planning, designing and layout work had been done by appellant over the period from 1911 to 1937. On December 18, 1943, the board heard appellant in person on his application and the plans and sketches he had theretofore submitted to the board. At this hearing appellant's testimony was taken, the same was recorded by an official court reporter and is a part of the record on this appeal.

Appellant began the study of architecture in 1908, and was then 16 years of age. From that date until 1913, he continued his studies and also worked for an architect and later for a building company, doing drafting, designing and estimating. In 1913 appellant entered the building industry. From 1913 to 1920 appellant erected residential, commercial and industrial structures and supervised all the construction thereof where the plans and specifications were drafted by architects, and also during the same period he constructed and supervised the construction of stores and residential buildings which were planned and laid out by him.

From 1920 appellant has been engaged in laying out, constructing and supervising the construction of residential, commercial and industrial buildings and in connection therewith evaluating the same and consulting with the owners pertaining thereto. Since 1920 most of such work pertained to industrial and commercial buildings. Approximately 5 per cent. of such construction jobs were designed by architects or engineers who were hired by the owner. Another 5 or 10 per cent. were designed by the owners themselves and in their plant engineering departments, and the plans for the remainder of such construction were personally sketched, drafted and prepared by the appellant after having consulted with owners; many of the plans and specifications were personally drafted and prepared by appellant and others were drafted in his office under his direction.

From 1913 to the present date appellant has been engaged solely in planning, laying out, constructing and supervising the construction of residential, commercial and industrial structures, the total cost of which is in excess of a million dollars.

In addition to the foregoing, we have in the record the expert testimony of the dean of the college of engineering at the University of Michigan, also of a graduate in civil engineering from Michigan State College, and of a registered professional engineer with a degree as a bachelor of science from the University of Michigan, testifying as to the educational attainments that should be considered necessary in one who engages in the practice of professional engineering.

The act states that a professional engineer shall mean one who, by reason of his knowledge of mathematics, the physical sciences, and the principles of engineering, acquired by professional education and

practical experience, is qualified to engage in engineering practice *as herein defined.* We will later herein refer to what constitutes the practice of professional engineering as defined in the act. The qualifications which must be possessed by one who is required to pass an examination to obtain a certificate of registration are quite definitely stated in the first paragraph of section 12 of the act. The requirements in section 12 as to what is necessary to obtain a certificate of registration under the so-called "grandfather clause" are quite different. Obviously the purport of the act is to relax the requirements for registration as applied to one who has been engaged in the active practice as a professional engineer for at least 12 years previous to January 1, 1938, the effective date of the act. Section 12 of the act in express language declares that at any time within five years from said date the board *shall accept as conclusive* evidence that an applicant is qualified for registration *without* examination, a specific record of at least 12 years of active practice as a professional engineer. Section 12 also provides that after said five years, certificates of registration can be issued only to those who meet the requirements for taking and passing the examination.

The precise question here is whether appellant has a specific record of at least 12 years of active practice as a professional engineer previous to January 1, 1938. The sharp disagreement between appellant and the board lies in what constitutes active practice as a professional engineer. The act does not require a college degree in engineering, or its equivalent, to qualify under the "grandfather clause." If such were the intent, the legislature could readily have said so in the act.

We must look to the act to ascertain what is meant by "the practice of professional engineering" as the term is used in the act.  In that regard the act provides:

"The practice of professional engineering within the meaning and intent of this act includes any professional service, such as consultation, investigation, evaluation, planning, design, or responsible supervision of construction in connection with any public or private utilities, structures, buildings, machines, equipment, processes, works, or projects, wherein the public welfare, or the safeguarding of life, health, or property is concerned or involved, when such professional service requires the application of engineering principles and data, except as hereinafter defined."

The record submitted by the appellant establishes that for at least 12 years previous to January 1, 1938, he was continuously engaged in the active practice as a professional engineer, within the definition of that term as embodied in the act.

In *Waier* v. *State Board of Registration for Architects, Professional Engineers & Land Surveyors,* 303 Mich. 360, the court, in considering the same question now before us, said (pp. 365, 366):

"We have in mind the well-established rules pertaining to statutory construction as set forth in various decisions, including *City of Grand Rapids* v. *Crocker,* 219 Mich. 178; *Garwols* v. *Bankers Trust Co.,* 251 Mich. 420; *In re Chamberlain's Estate,* 298 Mich. 278, cited by appellee.

"In applying the rules promulgated by these cases, we find no difficulty in giving full and complete effect to the provision under which appellant seeks registration.  The board, in our opinion, in denying registration to appellant, nullified the effect

of the provision by substituting its judgment for that of the legislature as to the requirements that an applicant for registration must possess. * * * However, the legislative body was of the opinion that one having at least 12 years of active practice as an architect was conclusively presumed to be qualified to engage in the profession without regard to educational training, ability to pass an examination propounded by the board, or the opinion of the board as to whether he was a 'good' or a 'bad' architect.

"If appellant submitted a specific record of 12 years' active practice as an architect prior to January 1, 1938, the effective date of the act, the board was bound to grant the application regardless of their personal opinions."

See, also, *Marino v. State Board of Registration for Architects, Professional Engineers & Land Surveyors,* 307 Mich. 438.

Appellant's record of more than 12 years of active practice as a professional engineer should have been accepted by the board as conclusive evidence of appellant's right to registration under the "grandfather clause." The writ of mandamus prayed for is granted, with costs to appellant.

BUTZEL, C. J., and CARR, BUSHNELL, SHARPE, REID, NORTH, and STARR, JJ., concurred.