# STATE OF MICHIGAN

# COURT OF APPEALS

REVIVE THERAPY,

   Plaintiff-Appellant,

v

STATE FARM MUTUAL INSURANCE
COMPANY,

   Defendant-Appellee.

UNPUBLISHED
April 28, 2016

No. 324378
Washtenaw Circuit Court
LC No. 14-000059-NO

Before: TALBOT, C.J., and HOEKSTRA and SHAPIRO, JJ.

PER CURIAM.

In this action under the no-fault act, MCL 500.3101 *et seq.*, plaintiff appeals as of right the order of the trial court granting summary disposition pursuant to MCR 2.116(C)(10) in favor of defendant, and denying plaintiff's motion for summary disposition. Because the undisputed facts establish that the massage therapy services at issue were not legally rendered as required to obtain benefits under the no-fault act, we affirm.

Between May and September of 2013, plaintiff provided massage therapy services to individuals injured in motor vehicle accidents. Defendant was first in priority with respect to providing these individuals with no-fault insurance benefits. Plaintiff brought this action against defendant, seeking reimbursement for medical expenses related to the massage therapy services.[1]

Defendant filed a motion for summary disposition, arguing that the massage therapy services were not "lawfully rendered" within the meaning of MCL 500.3157 because none of the providers held a valid massage therapist license under MCL 333.17959, and, therefore, the services were not reasonably necessary pursuant to MCL 500.3107. Plaintiff opposed defendant's motion and also filed a motion for summary disposition, arguing that Michigan did not require licensing for massage therapists before November 14, 2014, and, therefore, the services in this case were lawfully rendered and reasonably necessary. The trial court ruled in

---

[1] Plaintiff initially also sought payment for "physical therapy services," but plaintiffs have conceded that they are only seeking payment for massage therapy services.

-1-

defendant's favor, denying plaintiff's motion for summary disposition and granting summary disposition to defendant under MCR 2.116(C)(10). Plaintiff now appeals as of right.

On appeal, consistent with its arguments before the trial court, plaintiff argues that the court erred by granting summary disposition to defendant. Specifically, plaintiff concedes that the practitioners did not have massage therapy licenses in Michigan when they provided the massage therapy services at issue in 2013. However, although MCL 333.17957(1) requires massage therapists to be licensed as of January 9, 2009, plaintiff contends that the statute was not enforceable on that date because administrative rules implementing the licensing procedures had not yet been approved. Instead, plaintiff maintains that, under Mich Administrative Code R 338.703, a license was not required to practice massage therapy in Michigan until November 29, 2014. Given that there was no licensing requirement in place when the services were provided, plaintiff contends that the services were lawfully rendered and thus compensable under the no-fault act. In contrast, defendant argues that, under MCL 333.17957(1), Michigan has required a massage therapy license since 2009. According to defendant, Rule 338.703 applies only to those massage therapists who were practicing massage therapists before the enactment of 2008 PA 471, that is, those who were "grandfathered" for licensing under MCL 333.17959(3). Moreover, defendant asserts that, if there is any conflict between the rule and the statutory provisions, the statutes must control. Ultimately, because the providers at issue lacked the requisite license, defendant contends plaintiff cannot seek remuneration under the no-fault act.

We review de novo both a trial court's decision on a motion for summary disposition, *Moser v Detroit*, 284 Mich App 536, 538; 772 NW2d 823 (2009), and a trial court's interpretation and application of the relevant statutes and administrative rules, *In re ITC Application*, 304 Mich App 561, 574; 847 NW2d 684 (2014); *Kincaid v Cardwell*, 300 Mich App 513, 522; 834 NW2d 122 (2013). A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint and is properly granted when, viewing the evidence in a light most favorable to the nonmoving party, "the proffered evidence fails to establish a genuine issue regarding any material fact." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012).

"When interpreting statutory language, our obligation is to ascertain the legislative intent that may reasonably be inferred from the words expressed in the statute." *Koontz v Ameritech Servs, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002). To this end, we "must give effect to every word, phrase, and clause in a statute, and must avoid an interpretation that would render any part of the statute surplusage or nugatory." *Id*. Statutory words must be read in context, and undefined terms are given their plain and ordinary meaning. *MidAmerican Energy Co v Dep't of Treasury*, 308 Mich App 362, 370; 863 NW2d 387 (2014). "If the language of the statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written." *Ford Motor Co v Treasury Dep't*, 496 Mich 382, 389; 852 NW2d 786 (2014) (quotation marks and citation omitted).

"The no-fault act provides for a system of mandatory no-fault automobile insurance, which requires Michigan drivers to purchase personal protection insurance." *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 443; 814 NW2d 670 (2012), citing MCL 500.3101 *et seq*. "Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor

vehicle as a motor vehicle, subject to the provisions of [chapter 31 of the Insurance Code]." MCL 500.3105(1). Under MCL 500.3107(1)(a), personal protection insurance benefits are payable for "[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." To determine whether services are "reasonably necessary" and reimbursable under the no-fault act, MCL 500.3107 must be read in conjunction with MCL 500.3157, which provides:

> A physician, hospital, clinic or other person or institution *lawfully rendering* treatment to an injured person for an accidental bodily injury covered by personal protection insurance, and a person or institution providing rehabilitative occupational training following the injury, may charge a reasonable amount for the products, services and accommodations rendered. The charge shall not exceed the amount the person or institution customarily charges for like products, services and accommodations in cases not involving insurance. [Emphasis added.]

Reading MCL 500.3107 together with MCL 500.3157, it is clear that "[i]f the treatment was not lawfully rendered, it is not a no-fault benefit and payment for it is not reimbursable." *Cherry v State Farm Mut Auto Ins Co*, 195 Mich App 316, 320; 489 NW2d 788 (1992). Notably, a licensing statute makes "it unlawful to do without a license those things" included within the scope of a licensed field. *Psychosocial Serv Assoc, PC v State Farm Mut Auto Ins Co*, 279 Mich App 334, 338; 761 NW2d 716 (2008). Thus, to be lawfully rendered, services must be provided "in compliance with licensing requirements." *Cherry*, 195 Mich App at 320.

The Michigan licensing requirements for massage therapists, MCL 333.17953 and MCL 333.17957, were added by 2008 PA 471, which became effective January 9, 2009. Pursuant to MCL 333.17957(1), "An individual shall not engage in the practice of massage therapy unless licensed under this part." MCL 333.17959 provides the methods by which an individual may obtain a license to practice massage therapy in Michigan as follows:

> (1) The department shall, upon submission of a completed application and payment of the appropriate application processing and license fee, issue a license under this part to an individual who fulfills all of the following requirements:
>
> (a) Has a high school diploma or the equivalent as determined by the board.
>
> (b) Is of good moral character as defined in section 1 of 1974 PA 381, MCL 338.41.
>
> (c) Is at least 18 years of age.
>
> (d) Has successfully passed an examination meeting the requirements of [MCL 333.17961]. The passage of this examination may have occurred before January 9, 2009.
>
> (e) Has successfully completed as least one of the following:

(*i*) A supervised curriculum in a school that has not less than 500 hours of classroom instruction.

(*ii*) At least 500 hours of course and clinical massage education in a substantially equivalent program in another state, country, jurisdiction, territory, or province that, on a case-by-case review, is found by the board to be sufficient.

(2) The department shall issue a license to an applicant who meets the requirements of subsection (1)(a), (b), and (c) and who is currently licensed as a massage therapist in another state, country, jurisdiction, territory, or province that requires standards for licensure that are substantially equivalent to the requirements for licensure under this part, as determined by the board.

(3) Until two years after the effective date of the rules promulgated under this part, the board may issue a license to an applicant who meets the requirements of subsection (1)(a), (b), and (c) and presents acceptable proof to the board that he or she has fulfilled 1 of the following requirements:

(a) For at least 1 year before January 9, 2009, has been an active member, as a massage therapist, of a national professional massage therapy association that was established before the year 2000, that offers professional liability insurance as a benefit of membership, and that has an established code of professional ethics.

(b) Has practiced massage therapy for an average of at least 10 hours per week for 5 or more years, as established by affidavit of the applicant.

(c) Has practiced massage therapy for an average of at least 10 hours per week for at least 3 years, as established by affidavit of the applicant, and has successfully completed at least 300 hours of formal training in massage therapy acceptable to the board, as established by evidence from the school or schools attended.

(d) Has successfully passed an examination meeting the requirements of [MCL 333.17961]. The passage of this examination may have occurred before January 9, 2009.

(e) Has fulfilled the requirements under subsection (1)(e).

2008 PA 471 also created the Michigan board of massage therapy. See MCL 333.17955. The act provided that the board "shall provide that applicants pass an examination that measures entry level competence before issuance of a license under this part," MCL 333.17961(1), and set requirements for the board's adoption of examinations, MCL 333.17961(2). The act further required that the board promulgate rules to create a code of professional ethics, MCL 333.17963, and to set continuing education requirements, MCL 333.17965.

The board did not promulgate any rules with respect to 2008 PA 471 until 2012. As relevant to this appeal, the board promulgated Mich Administrative Code, R 338.703, which provides as follows:

Effective 2 years from the effective date of this rule,[2] and in accordance with MCL 333.17959(3) of the code, any individual who intends to practice as a massage therapist in Michigan shall possess a Michigan license to practice in this state.

As a related matter, Mich Admim Code R 338.711 states that "[a]n applicant for a massage therapist license under [MCL 333.17959(3)] of the code shall submit the required fee and a completed application on a form provided by the department within 2 years of the effective date of this rule."

In this case, considering the statutory and administrative framework governing the licensing of massage therapists, we conclude that services provided by unlicensed individuals in 2013 were not lawfully rendered. To begin with, the plain and unambiguous language of MCL 333.17957(1) provides that "[a]n individual shall not engage in the practice of massage therapy unless licensed under this part." "The phrases 'shall' and 'shall not' are unambiguous and denote a mandatory, rather than discretionary action." *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 65; 642 NW2d 663 (2002). It follows that the statutory licensing requirements set forth for massage therapists are mandatory and, to lawfully render massage therapy services, an individual must comply with the licensing requirements set forth in part 179A of the public health code. See MCL 333.17957(1). Moreover, MCL 333.17957(1) became effective January 9, 2009. 2008 PA 471. Thus, at the time the massage therapy services at issue in this case were rendered in 2013, by statute, Michigan required individuals to obtain a license before practicing massage therapy. There is no dispute in this case that none of the providers were licensed massage therapists when they provided services in 2013.[3] Consequently, the services were not lawfully provided insofar as the therapy was performed without the massage therapy license required by MCL 333.17957(1). See *Cherry*, 195 Mich App at 319-320.

In contrast to this conclusion, plaintiff contends that Rule 338.703 makes plain that the licensing requirement does not take effect until "2 years from the effective date" of the rules, which was November 29, 2012, meaning that a license was not required until November 29, 2014. Plaintiff's argument in this respect misconstrues Rule 338.703 and conflates the statutory licensing requirement with the methods for obtaining a license, specifically, the grandfathering

---

[2] Rule 338.703 became effective November 29, 2012.

[3] We note that the statutory provisions at issue authorize the board to promulgate rules to enforce and implement the licensing requirements, and that such rules were not made effective until November 29, 2012. Plaintiff argues that the lack of administrative rules prevented the providers from obtaining the license required by MCL 333.17957(1). However, the lack of administrative rules until November 29, 2012 is irrelevant to the analysis in the present case because the services at issue were provided in 2013, *after* the promulgation of the rules on which plaintiff relies. Stated differently, even assuming that it was not possible for an individual to obtain a license to practice as a massage therapist on January 9, 2009, the rules were in place on November 29, 2012, before provision of the services at issue in this case, and thus the providers could have obtained the necessary license incident to these rules. See MCL 333.17957(1).

provision allowing more permissive licensing rules for those massage therapists practicing before the enactment of 2008 PA 471. That is, as discussed, MCL 333.17957(1) sets forth a clear licensing requirement, and prohibits the practice of massage therapy without a license. In comparison, MCL 333.17959 provides several methods by which an individual may obtain a license to practice massage therapy in Michigan. MCL 333.17959(1) provides the method by which new graduates of a massage therapy program can obtain their license; MCL 333.17959(2) provides the method by which licensed massage therapists from foreign jurisdictions can obtain their license in Michigan; and MCL 333.17959(3) provides the method by which massage therapists practicing before the enactment of 2008 PA 471, who satisfy the statutory requirements, may obtain their license without the need for additional education, training, or examination.

In effect, MCL 333.17959(3) is a grandfathering provision, which provides a period of two years from the date of the enactment of the statute and, by amendment, from the date the board promulgated rules, for those practicing massage therapists to obtain a license under somewhat more relaxed standards than those applicable to new massage therapists.[4] Cf. *Kaufmann v State Bd of Registration for Architects, Prof'l Engineers & Land Surveyors*, 313 Mich 258, 264; 21 NW2d 122 (1946) (discussing purpose and application of grandfather clause under professional engineers licensing statute). Consistent with this statutory provision, Rule 338.703 allowed those practicing massage therapists "2 years from the effective date of this rule" and "in accordance with MCL 333.17959(3) of the code," to obtain a license to practice massage therapy. By its plain terms, Rule 338.703 applies to practicing massage therapists seeking a license under MCL 333.17959(3). Nothing in the language of Rule 338.703 suggests that the rule applies to individuals seeking a license under MCL 333.17959(1) or (2). In other words, Rule 338.703 is not a blanket extension on the licensing requirement for *all* would-be massage therapists, but a grandfathering provision relevant only to individuals satisfying the requirements of MCL 333.17959(3). Plaintiff has neither alleged nor provided evidence that its providers would qualify to apply for a license under MCL 333.17959(3). This provision and Rule 338.703 are thus inapplicable on the present facts, and they do not render the unlicensed services in this case lawful.[5] In sum, because neither plaintiff nor its providers were licensed to provide massage therapy services at the time the services were rendered, the massage therapy services

---

[4] Originally, MCL 333.17959(3) permitted practicing massage therapists to obtain their license under the less stringent rules of subsection (3) for the first two years after the "effective date" of the statute, i.e., for two years after January 9, 2009. See 2008 PA 471. However, the statute was later amended to provide for this grandfather-type licensing "[u]ntil 2 years after the effective date of the rules promulgated under this part[.]" 2010 PA 304.

[5] Given our conclusion that Rule 338.703 does not apply in this case, we need not decide whether this rule allows a grandfathered massage therapist a grace period in which to lawfully practice without a license for two years or whether such a grace period impermissibly conflicts with MCL 333.17957(1) and MCL 333.17959(3).

were not lawfully rendered and, therefore, these were not compensable services under the no-fault act.[6]  See *Cherry*, 195 Mich App at 319-320.

Finally, plaintiff also argues that summary disposition was premature as the discovery period had not ended.  We disagree.  "The purpose of summary disposition is to avoid extensive discovery and an evidentiary hearing when a case can be quickly resolved on an issue of law." *Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp*, 259 Mich App 315, 324; 675 NW2d 271 (2003).  "[A] party opposing summary disposition cannot simply state that summary disposition is premature without identifying a disputed issue and supporting that issue with independent evidence."  *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 292; 769 NW2d 234 (2009).  In this case, the undisputed facts show that the providers lacked the requisite license in 2013.  Thus, the case could be resolved as a matter of law and the trial court's grant of summary disposition was not premature.

Affirmed.  Defendant, being the prevailing party, may tax costs pursuant to MCR 7.219.


/s/ Michael J. Talbot
/s/ Joel P. Hoekstra

---

[6] In light of our conclusion that the services were not lawfully provided, we need not address the parties' arguments regarding the applicability of city ordinances governing massage parlors.